IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LAURALEE E. LOPEZ,

      Plaintiff,

vs.                                                                                                     1:22-cv-00354-LF

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on plaintiff Lauralee E. Lopez's Motion to Reverse and Remand and memorandum in support, filed on December 1, 2022. Doc. 18. The Social Security Administration responded on February 1, 2023. Doc. 20. Ms. Lopez did not file a reply. The parties consented to my entering final judgment in this case. Docs. 3, 5. Having read the briefing and being fully advised in the premises, I find that the Administrative Law Judge (ALJ) applied the correct legal standards, and her decision is supported by substantial evidence. I therefore DENY Ms. Lopez's motion and AFFIRM the Commissioner's decision.

I.     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[1] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116,

---

[1] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically

determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[2] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Lauralee Lopez, a 61-year-old woman with a high school education, lives in Albuquerque with her husband and three children. AR 37, 93, 735.[3] Ms. Lopez has worked as a receptionist, customer service representative, and daycare provider. AR 210. She has filed two claims for Disability Insurance Benefits ("DIB"): the first, which the Court considers in this case, alleges disability between October 9, 2014, and April 19, 2017; the second, which has been fully resolved, resulted in a finding that Ms. Lopez was disabled as of April 20, 2017. AR 132. Ms. Lopez filed her first claim on October 10, 2014, alleging disability starting December 19, 2014, due to back problems, depression, and a blood infection. AR 94–95. The Social Security Administration ("SSA") denied her claim initially and on reconsideration. AR 94–118. Ms. Lopez requested a hearing before an ALJ. AR 133–34. On February 15, 2017, ALJ Raul C.

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

[3] Documents 10–1 through 10–21 comprise the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

Pardo held a hearing. AR 61–92. ALJ Pardo issued his unfavorable decision on April 19, 2017, and the Appeals Council denied Ms. Lopez's request for review on January 12, 2018. AR 41–56, 1124–29. This Court reviewed ALJ Pardo's decision and remanded for reconsideration on May 28, 2019. AR 1130–42. On March 31, 2020, ALJ Jennifer M. Fellabaum held a hearing to consider whether Ms. Lopez was disabled between October 2014 and April 2017. AR 1077–1103. On April 29, 2020, ALJ Fellabaum issued an unfavorable decision. AR 1050–69. Ms. Lopez brought that decision to this Court as well; the Court, granting an unopposed motion by the Social Security Administration, remanded for further proceedings. AR 1396–1407. ALJ Fellabaum held another hearing on December 2, 2021, AR 1348–69, and issued an unfavorable decision on March 2, 2022, AR 1317–39. It is this third decision that is now before the Court.

The ALJ found that Ms. Lopez met the insured status requirements of the Social Security Act through June 30, 2018. AR 1323. At step one, the ALJ found that Ms. Lopez had not engaged in substantial, gainful activity between October 9, 2014, and April 19, 2017, the period covered by this decision. *Id*. At step two, the ALJ found that Ms. Lopez's degenerative disc disease, lumbosacral osteomyelitis, obesity, right toe fusion, depression, anxiety, and obstructive sleep apnea were severe impairments during this period, and that Ms. Lopez's osteoarthritis of the right shoulder was severe beginning on January 27, 2017. AR 1323–24. At step three, the ALJ found that none of Ms. Lopez's impairments, alone or in combination, met or medically equaled a Listing. AR 1324–26. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Ms. Lopez's RFC. AR 1326–37. Between October 2014 and April 2017, the ALJ found Ms. Lopez had the RFC to

> perform light work as defined in 20 CFR 404.1567(b) except she could rarely twist, stoop and crawl, defined as less than 10 percent of the workday. She could occasionally crouch, kneel, and climb ramps and stairs. She could never climb ladders, ropes, or scaffolds, or be exposed to unprotected heights, hazardous

> machinery, or concentrated exposure to environmental irritants. She could occasionally use right foot controls. She could perform simple routine tasks, with no fast-paced production work. She could make simple work decisions. Her work should be performed in the same location every day. She could occasionally interact with co-workers, supervisors, and the general public.

AR 1326–27.

At step four, the ALJ concluded that Ms. Lopez was not capable of performing her past relevant work as a customer service representative and daycare director. AR 1337. At step five, the ALJ found that Ms. Lopez was able to perform work that existed in sufficient numbers in the national economy, including photocopy machine operator, mail clerk, and router. AR 1338–39. The ALJ thus found Ms. Lopez not disabled at step five. AR 1339.

Ms. Lopez did not file written exceptions to the Appeals Council, nor did the Appeals Council review the ALJ's decision of its own accord. Ms. Lopez timely filed her appeal to this Court on May 9, 2022. Doc. 1.[4]

### IV. Ms. Lopez's Claims

Ms. Lopez raises three main arguments for reversing and remanding this case:

1. The ALJ erred by failing to properly account in the RFC for the mental limitations found at step three of the sequential evaluation, *see* Doc. 18 at 6–10;
2. The ALJ erred by failing to properly account in the RFC for the impacts that Ms. Lopez's obesity had in combination with her other impairments, *see id.* at 10–12;
3. The ALJ did not assess whether opinions from three of Ms. Lopez's treating sources were entitled to controlling weight, as required by regulation, *see id.* at 12–13.

These claims are without merit.

---

[4] If the Appeals Council does not review the ALJ's decision, the decision becomes final on the 61st day after notice of the decision. A claimant has 60 days from that date to file an appeal in federal district court. 20 C.F.R. §§ 404.981, 404.984; *see also* AR 1318.

V.   Analysis

    A.   **The ALJ properly considered Ms. Lopez's mental limitations in determining her RFC.**

At step two, ALJ Fellabaum found that Ms. Lopez's anxiety and depression were severe impairments—that is, each "significantly limits [her] ability to perform basic work activities." AR 1322. At step three of the sequential evaluation process, the ALJ is required to determine whether Ms. Lopez's impairments, alone or in combination, are "of a severity to meet or medically equal the criteria of an impairment listed in [SSA regulations]." 20 C.F.R. § 404.1520(d); *see* AR 1322. In a thorough analysis, the ALJ found that Ms. Lopez's impairments led to moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting or maintaining pace; and adapting or managing herself. AR 1324–26. Ms. Lopez argues that the RFC does not reflect these limitations, and that this is error. *See* Doc. 18 at 6–10. I disagree. The RFC contains restrictions that account for each of the moderate limitations found by the ALJ and is supported by substantial evidence.[5]

In her RFC analysis, ALJ Fellabaum found that Ms. Lopez "has limitations in her ability to work due to her mental impairments." AR 1332. Although the ALJ does not explicitly list each limitation, these limitations appear to include moderate limitations with detailed instructions, mild limitations with simple instructions, moderate limitations carrying out instructions, moderate limitations with attention and concentration, moderate limitations with

---

[5] Ms. Lopez's argument focuses on the ALJ's finding of limitations at step three. *See* Doc. 18 at 7–9. In several paragraphs of its response, the SSA argues that the limitations found at this step are not required to be reflected in the RFC. Doc. 20 at 9–10. Because the ALJ finds analogous limitations *during* her RFC analysis, I will not consider the relationship between limitations found at step three and the RFC.

working without supervision, moderate limitations with social interaction, moderate limitations with adapting to changes, and mild limitations being aware of hazards and reacting appropriately. AR 1333; *see also* AR 1335–36. Though the language is not identical, the moderate limitations found in the RFC analysis substantially correspond to those which Ms. Lopez complains are not reflected in the RFC. Moreover, the RFC accounts for these moderate mental limitations as follows:

> [Ms. Lopez] could perform simple routine tasks, with no fast-paced production work. She could make simple work decisions. Her work should be performed in the same location every day. She could occasionally interact with co-workers, supervisors, and the general public.

AR 1327.

It is true that the ALJ's RFC analysis contains no substantive discussion of how these restrictions correspond to Ms. Lopez's moderate mental limitations. After a comprehensive analysis of medical records and opinions, the ALJ stated only: "Based on the foregoing, I find the claimant has the above residual functional capacity assessment, which is supported by the medical evidence. . . ." AR 1337. Nevertheless, it is clear that the ALJ intended that the RFC reflect moderate mental limitations: without fail,[6] the ALJ implicitly accepted such limitations and explicitly rejected other degrees of mental limitation when considering the medical opinions of Drs. Scott Walker and H.T. Unger, AR 1332; Dr. Shari Spies, AR 1333; Dr. Charles Chaves, AR 1334; Mayra Haynes, LMFT, AR 1334–35; Dr. Kevin Henry, AR 1335; Michelle Romero, LCSW; and Louis Wynne, PhD, AR 1336. *Cf. Saiz v. Kijakazi,* 2022 WL 4235325, at *10 (D.N.M. Sept. 14, 2022) (unpublished) (inferring that "additional restrictions . . . were aimed at incorporating a moderate concentration limitation"). Because the ALJ's reasoning is clear—and

---

[6] This does not apply to the two mild limitations listed above, which do not pertain to Ms. Lopez's argument.

7

supported by extensive record citations—the omission of an articulated relationship between Ms. Lopez's limitations and the RFC is harmless. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) ("merely technical omissions . . . do not dictate reversal," especially where the ALJ's explanation is "comprehensive").

Ms. Lopez argues that restrictions in the RFC do not address the moderate limitations found by the ALJ. Specifically, she argues that:

1. "A finding for simple routine tasks and simple work decisions does not adequately address the moderate limitations in understanding, remembering, or applying information," Doc. 18 at 8;
2. The limitation to no fast-paced production work "arguably covers the moderate mental limitation in pace, but the ALJ failed to provide how the moderate limitations in concentration and persisting was considered in the RFC," *id.* at 9; and
3. "[T]he ALJ failed to explain how a moderate limitation [in the ability to interact with others] equates to occasionally being able to interact with others in the workplace," *id.*

The restrictions in the RFC effectively limit Ms. Lopez to unskilled work. *See Soderberg v. Kijakazi,* 2022 WL 884305, at *4 (D.N.M. Mar. 25, 2022) (unpublished) (such restrictions are "synonymous with limiting [a claimant] to unskilled work"). Unskilled work generally requires only the following mental activities: (1) "[u]nderstanding, remembering, and carrying out simple instructions"; (2) "[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions"; (3) "[r]esponding appropriately to supervision, co-workers and usual work situations"; and (4) "[d]ealing with changes in a routine work setting." SSR 96–9p, 1996 WL 374185, at *9 (July 2, 1996); *see also Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015); *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016). Where evidence in the record indicates that a claimant has the capacity for these activities despite their mental limitations, an RFC that restricts the claimant to unskilled work will "adequately account" for those limitations. *Vigil*, 805 F.3d at 1204. This is true for moderate limitations in concentration,

persistence, and pace. *See Vigil*, 805 F.3d at 1203–04; *Smith v. Colvin*, 821 F.3d 1264, 1268–69 (10th Cir. 2016); *Saiz*, 2022 WL 4235325, at *9–10; *cf. Pitts v. Kijakazi*, 2021 WL 5049441, at *5–7 (D.N.M. Nov. 1, 2021) (unpublished) (remanding where an RFC was based on narrative opinions that did not address how moderate mental limitations affected the claimant's ability to maintain attention for extended periods). It is also true for limitations in understanding, remembering, or applying information. *See Nelson*, 655 F. App'x at 628–29; *Gutierrez v. Kijakazi*, 2021 WL 4710508, at *4 (D.N.M. Oct. 8, 2021) (unpublished); *Zambrano v. Kijakazi*, 2023 WL 6284585, at *4 (D.N.M. Sept. 27, 2023) (unpublished); *cf. Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that a limitation to "simple, repetitive tasks," *inter alia*, made it apparent that the ALJ accepted claimant's moderate limitation in understanding, remembering, and applying instructions).

Ms. Lopez does not point to any evidence that indicates she is unable to perform unskilled work, nor does she point out particular difficulties that her limitations would create in performing the positions listed by the vocational expert. Instead, she argues that, because "[m]ental functions 'are not skills but, rather, general prerequisites for most work at any skill level,'" a limitation to unskilled work will not eliminate positions too difficult for her to perform.[7] Doc. 18 at 8 (citing *Chapo v. Astrue*, 682 F3d 1285, 1290 n.3 (10th Cir. 2012)). This argument is squarely contradicted by prevailing Tenth Circuit caselaw, as discussed above.

---

[7] With regard to her moderate limitations in concentration, persistence, and maintaining pace, Ms. Lopez also argues that any job requires the ability to maintain concentration and attention for approximately two hours. Doc. 18 at 9. The Tenth Circuit has recognized that this ability is included in the capacity to perform unskilled work but nonetheless found that a limitation to unskilled work may account for moderate mental limitations in concentration, persistence, and pace. *See Vigil*, 805 F.3d at 1204 (citing the SSA Program Operations Manual System as "noting that the capacity to perform unskilled work includes ability to maintain attention for extended periods of two-hour segments but that concentration is 'not critical'").

9

Although the ALJ found multiple moderate mental limitations and explicitly recognized Ms. Lopez's substantial struggles with depression, anxiety, and pain, she also discussed multiple pieces of evidence that suggest that Ms. Lopez could perform unskilled work. This evidence includes Ms. Lopez's performance on two mental evaluations, AR 1332–33, 1336, and the function report filled out by Ms. Lopez herself in January 2015, which denies the relevant mental limitations, AR 1334. Given the ALJ's exceptionally comprehensive analysis and the lack of any evidence indicating that Ms. Lopez cannot perform unskilled work, I find that substantial evidence supports the ALJ's decision to account for Ms. Lopez's mental limitations by limiting her in the RFC to simple routine tasks, with no fast-paced production work, simple work decisions, and work performed in the same location each day. AR 1327.

     Ms. Lopez also argues that because she cannot determine when her ability to interact will be moderately impaired, a limitation to occasional interaction, which would require her to interact with others up to one-third of the day, does not account for this limitation. *See* Doc. 18 at 9–10. Both as a technical matter and based on the evidence of Ms. Lopez's ability to interact, this argument is without merit. A moderate limitation means that a claimant has a "fair" ability to function independently, appropriately, effectively, and on a sustained basis in the relevant area. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2). This is commensurate with a limitation to occasional functioning in that area, and not commensurate with Ms. Lopez's argument, which implies that Ms. Lopez could be expected to interact only at her discretion. *See Green v. Kijakazi*, 2023 WL 2731736, at *7 (D.N.M. Mar. 31, 2023) (unpublished) (finding that identical limitations accounted for a moderate limitation in interacting with others); *Kerekes v. Kijakazi*, 2022 WL 4129400, at *4 (D.N.M. Sept. 12, 2022) (unpublished) (finding that similar limitations accounted for a moderate limitation in interacting with others); *cf. Lee v. Colvin,* 631 F. App'x

538, 540–42 (10th Cir. 2015) (holding that a limitation to "relat[ing] to supervisors and peers on a superficial work basis" accounted for a moderate limitation in interacting with such persons).

The record evidence reviewed by the ALJ shows that Ms. Lopez generally has been capable of interacting harmoniously with others for short periods, even when she is struggling with depression and anxiety. During evaluations, she consistently has had good eye contact and cooperative speech, *see* AR 1330–32, "even when feeling depressed, anxious, and irritable," AR 1332. Moreover, as the SSA points out in its response, "all three jobs relied upon by the ALJ have a people rating . . . [that] indicates 'the lowest possible level of human interaction that exists in the labor force." Doc. 20 at 12 (quoting *Lane v. Colvin*, 643 F. App'x 766, 770 n.1 (10th Cir. 2016)). Substantial evidence supports the ALJ's decision to account for Ms. Lopez's moderate limitation in interaction by limiting her to occasional interaction.

**B.     The ALJ properly considered the impacts of Ms. Lopez's obesity on her RFC.**

Ms. Lopez argues that the ALJ failed to assess the effects of her obesity in three ways:[8]

1. The ALJ "considered obesity in combination with [Ms. Lopez's] pulmonary and musculoskeletal impairments, but failed to provide any analysis for how the combined effects are greater, as Ms. Lopez testified to";
2. The ALJ "failed to assess [the impact of Ms. Lopez's obesity on her] ability to move about the work environment" while performing light work; and

---

[8] Ms. Lopez subsequently quotes *DeWitt v. Astrue*, 381 F. App'x 782 (10th Cir. 2010), apparently for the premise that an ALJ's failure to articulate the connection between a claimant's obesity and restrictions in the RFC is error requiring remand. However, that case is plainly distinguishable. In *DeWitt*, the Tenth Circuit remanded because the ALJ based the RFC primarily on a medical opinion that the ALJ "mistakenly believed" had accounted for the claimant's obesity. *Id.* at 785. In fact, that opinion "simply never mentioned obesity," and the court "fail[ed] to see how the ALJ's reliance on [that opinion] could satisfy the duty to consider the effects of DeWitt's obesity on her other severe impairments." *Id.* In this case, ALJ Fellabaum formulated an RFC based on extensive analysis of record evidence and multiple medical opinions, several of which discussed Ms. Lopez's mobility, depression, and anxiety. Her findings are not undermined by the sort of faulty foundation at issue in *DeWitt*.

> 3. The ALJ "made no mention of how obesity would impact Ms. Lopez's depression and anxiety."

Doc. 18 at 11. Each argument fails for the same reason: Ms. Lopez never alleged specific ways in which her obesity impacted her functional capacity.

Ms. Lopez points out that, during a hearing before ALJ Fellabaum in 2021, she testified that her obesity had affected her by causing acid reflux—and related pain and breathing issues—and "ma[king] it more complicated to walk without pain at times," presumably contributing to her need to use a cane and, occasionally, a walker. *See id.* at 10; AR 1359. She does not, however, point to any testimony or other record evidence that suggests that her obesity led to greater pulmonary or musculoskeletal impairments or more stringent limitations related to her depression or anxiety. Besides the fact that she regularly used a cane, she also does not point to evidence that suggests that her obesity impacted her ability to move about the work environment. In short, Ms. Lopez has not "shown that her obesity alone, or in combination with other impairments, resulted in any further limitations." *Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015); *see also Howard v. Barnhart*, 379 F.3d 945, 948 (10th Cir. 2004).

Given the lack of any specific allegations, the ALJ's discussion of obesity was sufficient. The ALJ recognized Ms. Lopez's obesity, summarized the requirement that she consider the effects of obesity on Ms. Lopez's functional capacity, and acknowledged that Ms. Lopez's severe obesity "could reasonably be expected to affect her pulmonary and musculoskeletal impairments." AR 1329. She also recognized that Ms. Lopez routinely used a cane or walker to assist with sustained ambulation. *See* AR 1327, 1328, 1330. The ALJ nonetheless rejected limits on walking found in several medical opinions and explained why: the evidence showed that Ms. Lopez's gait, posture, and mobility improved significantly after her surgeries and with physical therapy, that she had normal leg strength, and that she only had slight alterations in her gait. *See*

AR 1333, 1335, 1336–37. The ALJ was not permitted to "make assumptions about the severity or functional effects of obesity combined with other impairments," SSR 02–1p, 2002 WL 34686281, at *6 (Sept. 12, 2002), and was not "required to note the absence of any evidence that [Ms. Lopez's] obesity resulted in additional functional limitations or exacerbated any other impairment," *Smith*, 625 F. App'x at 899. I find no error in the ALJ's treatment of obesity.

        **C.**       **The ALJ properly evaluated opinions from Ms. Lopez's treating sources.**

Social Security regulations in effect until March 2017 required that an ALJ give a treating source's medical opinion controlling weight if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2).[9] The ALJ was required to perform a factor-based analysis of treating source opinions if the ALJ determined that a treating source was not entitled to controlling weight. *Id*. This analysis should be performed in two discrete steps. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Ms. Lopez argues that the ALJ erred by failing to perform the first step, a controlling weight analysis, when considering opinions from three of her treating sources. Doc. 18 at 12–13. She cites *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011), for this premise. *Id.* at 12. However, "[t]hat case involved an ALJ who determined that a treating physician's opinion was not entitled to controlling weight but then neglected to decide whether it was entitled to at least some weight. Here the situation is reversed—the ALJ didn't expressly say [s]he wasn't affording the opinions controlling weight but did adequately explain why they were entitled to no weight

---

[9] The SSA has issued new regulations regarding the evaluation of medical source opinions for claims filed on or after March 27, 2017. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5,844-01 (Jan. 18, 2017) (final rules). Ms. Lopez protectively filed her DIB claim in October 2014. *See* AR 190, 1107, 1352. Thus, the Court reviews the ALJ's consideration of the medical opinions under 20 C.F.R. § 404.1527, not 20 C.F.R. § 404.1520c.

and did so in a manner entitled to [] deference." *Tarpley v. Colvin*, 601 F. App'x 641, 643 (10th Cir. 2015) (citation omitted).

Ms. Lopez specifically objects to the ALJ's treatment of the opinions of Dr. Charles Chaves, Mayra Haynes, LMFT, and Dr. Kevin Henry, which the ALJ gave little to no weight. *See* Doc. 18 at 12–13; AR 1333–1336. In each case, although the ALJ did not explicitly analyze whether the opinion was entitled to controlling weight, she obviously and "implicitly declined to give the opinion controlling weight." *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014). Likewise, the ALJ provided sufficient reasons for the weight given to each opinion, which ranged from thorough discussions of conflicting evidence, *see* AR 1333, to a summary rejection of Dr. Henry's opinions on mental limitations because Dr. Henry, "a specialist in family medicine[, is] not qualified to assess mental limitations." AR 1336. Thus, though the ALJ did not adhere to the analytical framework prescribed in this Circuit, her treatment of these opinions is supported by substantial evidence and does not merit remand. *See Mays*, 739 F.3d at 575; *Chee v. Berryhill*, 2017 WL 4990550, at *6 (D.N.M. Oct. 31, 2017) (unpublished); *see also Keyes-Zachary*, 695 F.3d at 1167 ("[C]ommon sense, not technical perfection is our guide.").

## VI.     Conclusion

For the reasons stated above, I find that the ALJ applied the correct legal standards, and her decision is supported by substantial evidence.

IT IS THEREFORE ORDERED that Ms. Lopez's Motion to Reverse and Remand (Doc. 18) is DENIED and the Commissioner's decision is AFFIRMED.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent